CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 1 1 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RUSSELL ENDSLEY | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06cv00735 |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States Magistrate Judge |
|     Respondent. | ) | |

## MEMORANDUM OPINION

Plaintiff Russell Endsley ("Endsley") brought this action for review of the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). 42 U.S.C. §§ 401-33, 1381-1383 (2000). The parties have consented to the Court's jurisdiction and the case is before the Court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the Court cannot conclude that the Commissioner's ultimate disability determination is supported by substantial evidence. Accordingly, the case is reversed and remanded to the Commissioner for further administrative proceedings consistent with this opinion.

### I.

Endsley was born on August 6, 1961. He attended school through the tenth grade and does not have a General Equivalency Degree. (Administrative Record ("R."), at 126). Endsley worked in the construction industry until 1999, when he suffered a heart attack. (R. 126). His most recent previous work included that of a trim carpenter, dishwasher, and cook. (R. 95). Endsley protectively filed applications for a period of disability, DIB, and SSI based on a

disability on May 27, 2004, in which he alleged that he became disabled and unable to work on December 15, 2001 due to heart disease, bone deterioration, pelvic and kidney issues, and pain in his lower back, knees, hips, and shoulder. (R. 65, 66, 231). Under the Act, an individual is entitled to disability benefits if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a). An individual is entitled to SSI if they meet certain income requirements and are either blind, over the age of 65, or under a disability. 42 U.S.C. § 1381-83(a). "Disability" is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Endsley's application was denied initially and upon reconsideration; he then requested an administrative hearing. (R. 28, 35, 41).

Following an administrative hearing on December 1, 2005, in a decision eventually adopted as the final decision of the Commissioner, an Administrative Law Judge ("ALJ") found that Endsley met the requirements for insured status on the date of his alleged disability through the date of the ALJ's decision. (R. 24). The ALJ proceeded to determine whether Endsley was disabled during the relevant period, pursuant to the five-step process outlined in the Code of Federal Regulations. See 20 C.F.R. § 404.1520(a)(4) (2007). Under the Regulations, an ALJ must consider, in sequence, whether a claimant (1) is working, (2) has severe impairments, (3) has a listed impairment that makes him disabled as a matter of law, (4) can return to past work, and if not, (5) retains the capacity to perform specific jobs that exist in significant numbers in the national economy. Id. The claimant bears the burden of production and proof during the first

four steps of the inquiry. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). At the fifth step, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. Id. at 35. When a decision is made at any step that the claimant is disabled or not disabled, the review need not continue to the next step. 20 C.F.R. § 404.1520.

Based on the testimony presented at the hearing, including that of a vocational expert ("VE") and a medical expert ("ME"), the ALJ concluded that Endsley retained the residual functional capacity to perform a limited range of sedentary work.[1] (R. 25). To reach this conclusion, the ALJ determined that Endsley suffers "coronary heart artery disease with stent placement in the LAD,[2] degenerative disc disease of the lumbar spine, osteoarthritis of the AC[3] joint of the left shoulder and obesity, which constitute 'severe' impairments." (R. 24). Relying on the testimony of an ME, however, the ALJ found that Endsley's impairments did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1. (R. 24). As noted by the ALJ, the ME testified that the objective evidence reflected Endsley's cardiac impairment as "moderate." (R. 18). The ME also testified that, with regard to Endsley's musculoskeletal impairments, there was a lack of diagnostic testing by Endsley's treating physician, Dr. Cheek, and a lack of "objective evidence of discogenic impairment, such as one affecting nerve roots or the spinal cord in claimant's spine." (R. 18).

---

[1] Sedentary work requires an ability to stand and/or walk "occasionally," 20 C.F.R. §§ 404.1567(a), 416.967(a), up to two hours per day. See SSR 96-9P, 1996 WL 374185, at *3.

[2] "LAD" is the abbreviation for "left anterior descending (coronary artery)." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 992 (30th ed. 2003).

[3] "AC" is the abbreviation for "acromioclavicular." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 9 (30th ed. 2003).

3

The ALJ also found that Endsley's testimony was not fully persuasive regarding his symptomatology and resulting limitations. (R. 24). Accordingly, the ALJ concluded that Endsley was not disabled under the Act, and not entitled to the benefits sought. (R. 25). The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on October 27, 2006, when the Appeals Council denied Endsley's request for review. (R. 6-8). Endsley filed this action challenging the Commissioner's decision on December 14, 2006.

Endsley contends that the conclusions of the ALJ and Appeals Council are not supported by substantial evidence and should be reversed. To support this contention, Endsley argues that medical evidence submitted after the administrative hearing requires remand for review by a medical expert. Specifically, he contends that an MRI report and nerve conduction reports that were submitted after the administrative hearing, but before the ALJ rendered his opinion, should have been reviewed either by the testifying medical expert and/or agency staff physicians. (Pet. Mem. at 7).

Endsley also asserts that: 1) the ALJ failed to fully consider his combination of impairments–specifically, the effect of his right shoulder impairment on his ability to perform unskilled sedentary work; 2) the ALJ failed to comply with 20 C.F.R. § 404.1527 by not according adequate weight to the opinions of Endsley's treating physicians; and 3) the ALJ did not follow Social Security Ruling 02-01p in considering the effect of Plaintiff's obesity on his ability to work (Pet. Mem. at 3). The Court finds that these latter arguments lack merit for the following reasons. First, Endsley was diagnosed with mild arthritis in his non-dominant *left* shoulder (R. 472), a limitation taken into account by the VE when testifying that Endsley could perform work as an order clerk in the food and beverage industry, call operator in business

service and retail trade industries, and charge account clerk. (R. 485-88). Second, whereas the ALJ found little to no medical evidence to support Endsley's treating physicians' conclusions, (R. 22), the ALJ's opinion was consistent with 20 C.F.R. § 404.1527(d)(2), which provides that a treating source's opinion will not be given controlling weight if it is inconsistent with other substantial evidence in the claimant's case record. Finally, the ALJ considered the effect of Endsley's obesity on his ability to sustain activity on a regular and continuing basis in reaching the conclusions within the ALJ's opinion. (R. 18, 468).

## II.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

Congress outlined the remand powers of the district court in 42 U.S.C. § 405(g). A "sentence four" remand is aptly named for the fourth sentence of §405(g): "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A judgment affirming, modifying, or reversing the Commissioner's decision must accompany a "sentence four" remand. Melkonyan v. Sullivan,

501 U.S. 89, 99 (1991).

Courts in the Fourth Circuit are required to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). It is the duty of the ALJ, not the reviewing court, to resolve conflicts in the evidence. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Therefore, for the following reasons, this case is reversed and remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g).

### III.

During the administrative hearing, Endsley complained of severe back and leg pain that forces him to lay down and rest during the day. (R. 433-34). To substantiate his claim, he referred to the reports of his visits with his treating physician, Dr. Cheek, and treating cardiologist, Dr. Choubey. Both Dr. Cheek and Dr. Choubey treated Endsley on numerous occasions over a number of years. In their reports, Dr. Cheek and her medical assistants indicated that Endsley suffered from lower back pain and muscle spasms in his back, leading Dr. Cheek to diagnose Endsley with lumbar radiculitis. (R. 271-87; 299-317; 329-30; 334). In a medical report submitted by Dr. Choubey, Endsley was diagnosed as suffering from chronic leg pain, secondary to neuropathy.

At the hearing, the ME stated that he could not find objective evidence for these diagnoses. (R. 463-64). The ME testified that while Endsley's complaints of back and leg problems and neuropathy may be legitimate, these complaints were not substantiated by appropriate medical tests. (R. 476-80). The ME suggested that an MRI and nerve conduction study might provide the needed objective evidence to determine whether Endsley has a medically

determinable impairment that requires him to lay down and rest during the day. (R. 477-78).

According to the ME's testimony that Endsley's medical records lacked objective evidence to corroborate his diagnoses, the ALJ granted Endsley time to "submit additional medical evidence." (R. 498-99). Endsley timely submitted the results of an MRI of his lumbar spine, and a medical report from neurologist Dr. Rollin Hawley, discussing the results of nerve conduction studies and an EMG study of Endsley's lower extremities. (R. 384-89). The MRI report highlighted a disc protrusion to the left of midline at L3-4 that creates mild compression of the left side of the thecal sac. The reviewing physician indicated that "nerve root irritation might be created with this finding," and stated that this possibility "should be correlated with the clinical exam." (R. 388-89). Dr. Hawley's report stated that Endsley's neurological exam was normal, but that Endsley had a low pain threshold. Dr. Hawley opined that Endsley's obesity causes periodic lumbrosacral strain that can be expected to cause degenerative arthritis in his low back and lower extremities. (R. 385).

Neither the MRI results nor Dr. Hawley's report were reviewed by the ME, who had testified that such reports would be useful in rendering a medical opinion as to Endsley's back and leg problems. Further, it does not appear from the ALJ's opinion that the ALJ correlated either medical report with Endsley's prior clinical exams in order to determine whether Endsley's impairments met or were medically equivalent to a listed impairment. Although the administrative law judge is responsible for deciding the ultimate legal question of whether a listing is met or equaled, "longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and

7

given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3. In this case, neither the testifying ME nor a physician designated by the Commissioner reviewed Endsley's MRI and nerve conduction reports.

The Court finds that an updated medical expert opinion should have been obtained by the ALJ before a decision denying disability based on medical equivalence was made. Accordingly, the case is reversed and remanded to the Commissioner, who shall appoint a physician to review the results of Endsley's MRI, nerve conduction studies, and EMG study, and correlate them with his prior clinical exams.

The Clerk of Court hereby is directed to send a copy of the Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER:** This _11th_ day of October, 2007.

Michael F. Urbanski
United States Magistrate Judge